In re Roger K.C. TARDIFF, Debtor.

Luella ROUILLARD, Plaintiff,

v.

Roger K.C. TARDIFF, et al., Defendants.

Dennis G. BEZANSON, Trustee, Third Party Plaintiff,

v.

AUGUSTA SAVINGS BANK, et al., Third Party Defendants.

Bankruptcy No. 183–00110.
Adv. No. 183–0052.

United States Bankruptcy Court, D. Maine.

May 1, 1984.

Joseph M. O'Donnell, Goodspeed & O'Donnell, Hallowell, Me., for Luella Rouillard.

Dennis Bezanson, South Portland, Me., Trustee.

Stanley Greenberg, Greenberg & Greenberg, Portland, Me., for debtor/defendant.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Bankruptcy Judge.

On June 16, 1983, Plaintiff Luella Rouillard, the debtor's ex-wife, filed a complaint which, in part, objected to the debtor's claimed homestead exemption in certain real property located in Augusta. On August 10, 1983, the trustee filed both a cross-claim and a third party complaint which, in part, raised the same objection. A hearing was held solely on the objections to the claimed exemption.

The Court finds the following facts. At issue are two adjoining parcels of land upon one of which is located a house (hereafter, the "house lot"). Prior to 1978, the debtor and Rouillard held the property as joint tenants, living there with their three minor children. On July 18, 1978, the parties were divorced. As part of a settlement agreement which was incorporated into the divorce decree, Rouillard was awarded custody of the children, while the debtor was ordered to pay child support and medical expenses. The parties continued to own the real estate as joint tenants,[1] but Rouil-

---

1. Only the house lot is explicitly dealt with in the divorce decree. It appears that the adjoining lot is owned jointly, though whether as tenants in common or as joint tenants is uncertain. For the purposes of this opinion, the Court need not decide that issue.

lard was given exclusive possession. She also undertook responsibility for all household bills, mortgage payments, taxes and insurance. Furthermore, the agreement provided that upon the earlier of Rouillard's remarriage or July 18, 1982 (by which time the youngest child would have become 18 years of age), the real estate was to be sold and the proceeds divided between the debtor and Rouillard.

Following the divorce, Rouillard and the children lived in the house through February, 1981. On February 21, 1981, Rouillard remarried, and she and the children moved out of the house. The property was then listed for sale or rent. The debtor moved into the house on February 27, 1981, without Rouillard's consent. She filed a motion for contempt in state court on March 12, 1981, and an order issued on June 1, 1981, requiring the debtor to vacate the premises on the grounds that Rouillard was entitled to exclusive possession under the divorce decree. The debtor complied with the order on or about June 30, 1981.

On June 9, 1981, the debtor signed a release deed which purports to convey his interest in the house lot to Michael and Elizabeth Doyon. The debtor testified that this transfer was intended to be a mortgage to secure a $3,000.00 loan received by the debtor from Michael Doyon's father.

After the debtor moved out, the house was rented to third parties. On at least one occasion a contract for sale was signed by the debtor and Rouillard. The sale did not take place, however, apparently because the Doyons refused to cooperate. On April 22, 1983, the debtor filed his bankruptcy petition.

The debtor testified that throughout the period following his divorce he has intended to use his share of the proceeds from any sale of the house for the purchase of another residence. Since his divorce the debtor has lived in a number of apartments, boarding homes and motels. While he has on occasion been interested in purchasing a home, he has not been able to afford a down payment. The debtor testified that he has never intended to abandon his former home, and that in fact he had

hoped at one time to buy out Rouillard's share. He continues to intend to use any future proceeds from the sale of the house to purchase another residence.

■ The debtor's right to an exemption is governed by Me.Rev.Stat.Ann. tit. 14, § 4422(1) (Supp. 1983–84), which exempts the "debtor's aggregate interest, not to exceed $7,500 in value, in real or personal property that the debtor or a dependent of the debtor uses as a residence...." The objecting parties bear the burden of proving that the debtor is not entitled to the claimed exemption. Bankruptcy Rule 403(c) (superseded August 1, 1983); Bankruptcy Rule 4003(c).

■ This Court has recently held that the critical time for determining the debtor's entitlement to the exemption is the date that the bankruptcy petition is filed. *In re Grindal*, 30 B.R. 651, 652 (Bkrtcy.D. Me.1983). The objecting parties note that on that date neither the debtor nor his dependents occupied the homestead. Therefore, they argue, the Court need look no further and should deny the exemption. This approach, however, was rejected by this Court in *Grindal.* There the Court looked to the purposes underlying the homestead exemption, and concluded that actual occupation of the homestead on the filing date "is neither necessary nor sufficient to qualify for the exemption." *Id.* at 653. The Court explained that the primary factor is the debtor's intention on the filing date. Noting that the homestead exemption should be liberally construed, the Court cited with approval decisions extending the homestead exemption to proceeds from the sale of the home where the debtor intends to use those proceeds within a reasonable time to purchase another home. *Id.* at 653 n. 4. The Court concluded that the homestead exemption is intended to help homeowners maintain their status as homeowners, thereby promoting the stability and welfare of the state by encouraging property ownership, and securing to the debtor a home for himself and his family. *Id.* at 653.

■ In this case, the divorce decree was clearly intended to provide a home for the

debtor's children with their custodial parent during their minority. Upon their reaching majority (or upon the custodial parent's remarriage, when, presumably, it was contemplated that they would move), the homestead was to be immediately sold and the proceeds divided between the debtor and his former spouse. Assuming that these events had taken place, and that the debtor intended to use his share of the proceeds within a reasonable time to purchase another residence, the debtor would have been justified in claiming an exemption in those proceeds under the rationale of *Grindal.* If all had gone as planned, the debtor's children, who were his dependents,[2] would have used the house as a residence up to the time of sale, when the debtor would have had the requisite intent to use the proceeds to purchase another residence. The only difference between what was intended and what actually occurred is that the parties have been unable to sell the house, despite their good faith efforts to do so. At no time since the divorce has the debtor purchased a second home upon which he could claim a homestead exemption, and on the date he filed his bankruptcy petition the debtor intended to use any sale proceeds to buy another residence. The same policy grounds set forth in *Grindal* which support extending the homestead exemption to proceeds also support extending the homestead exemption to the particular facts in this case. *Cf. In re Hansen,* 17 B.R. 239 (Bkrtcy.D.S.D. 1982).

The objecting parties next contend that the debtor lost his right to claim the homestead exemption when he conveyed the property to the Doyons. For the purposes of this opinion only, the Court will assume that the conveyance was intended to be a mortgage transaction.[3] Under Maine law, "[a]ny written evidence of conveyance may be shown to have been in reality an equitable mortgage, and the agreement which makes it so may be oral." *Braddock v. McBurnie,* 152 Me. 39, 41, 122 A.2d 319 (1956) (citing *Smith v. Diplock,* 127 Me. 452, 144 A. 383 (1929)). Generally, the claim of homestead is sustainable in premises held by the claimant as equitable owner. *See In re Soter,* 26 B.R. 838, 841 (Bkrtcy.D.Vt.) *appeal dismissed,* 31 B.R. 986 (D.C.Vt.1983); *see also In re Roberts,* 26 B.R. 397, 399 (Bkrtcy.D.Me.1983) (although legal title to mortgaged real estate vests in mortgagee, absent breach the entire estate remains in mortgagor); *cf.* 40 C.J.S. *Homesteads* § 183 (1944).[4]

Finally, Rouillard contends that the debtor is not entitled to the homestead exemption in the "non-house lot" on the grounds that it was never used as a residence. From the debtor's bankruptcy schedules, it appears that this lot adjoins the house lot. No other evidence with respect to either lot was presented to the Court. On the record before it, the Court holds that Rouillard has failed to carry her burden of proof on this issue.[5] *See* 40 C.J.S. *Homesteads* § 64 (1944).

---

**2.** *See In re Roberts,* 26 B.R. 397, 398 (Bkrtcy.D. Me.1983) (Divorced debtor paid child support for benefit of his five children living in former marital home with his former wife. Court distinguishes case from earlier case where neither debtors *nor their dependents* resided in claimed homestead.); *see also Barnett v. United States (In re Barnett),* 33 B.R. 70 (Bkrtcy.N.D.Tex.1983) (divorced debtor with child support obligations entitled to "family" homestead exemption even though ex-wife has custody of children).

**3.** The Doyons contend in their answer to the original complaint that the debtor has no interest in the property conveyed. They did not receive notice of the hearing on the exemption issue, and did not participate therein. The Court does not, and need not, determine at this time the true nature of the transactions between

the debtor and the Doyons. Obviously, if the Court should later determine that an unconditional sale occurred, then the debtor's claim of exemption in a house lot in which he has no interest may fail. See also note 5, *infra.*

**4.** The Court further finds that the objecting parties have failed to prove either that the debtor waived his exemption, or that he should be estopped from asserting it in these proceedings.

**5.** The Court's holding is conditioned upon its assumption that the debtor did not unconditionally convey his interest in the house lot to the Doyons. Should the Court at a later date decide that issue to the contrary, then the Court will at that time determine whether the debtor is still entitled to claim the homestead exemption in the adjoining lot.

In conclusion, except as provided in this opinion, the objections to the debtor's homestead exemption shall be denied. Enter order.