**In the Matter of Ray COTTINGIM and Kathy Cottingim, Debtors.**

**Bankruptcy No. 3–80–00320.**

United States Bankruptcy Court,
S. D. Ohio, W. D.

Oct. 28, 1980.

## MEMORANDUM DECISION AND ORDER

### FACT DETERMINATION

CHARLES A. ANDERSON, Bankruptcy Judge.

Debtors, Ray Cottingim and Kathy Cottingim, husband and wife, filed a voluntary petition in bankruptcy on 14 February, 1980. The schedules list real estate (in addition to personalty valued at $5,250.00), as follows:

"Land # 1260, Bldg. # 1240 Co. No. # 68 Lot No. # 5, Note: House is burnt unhabitable" [sic]

Under the scheduled property claimed as exempt is listed, "House 2329.66 A–1 $1,000.00". Under the scheduled creditors holding security is listed, "Margarett Cottingim House (Burnt–unhabited)" [sic].

In 25 April, 1980 Debtors filed an amendment to their schedules, setting forth a proper legal description to the real estate, being a town lot in the town of Crawfordsville, Preble County, Ohio, showing a valuation of $10,000.00.

On 28 April, 1980, Thomas R. Noland, Trustee in Bankruptcy, filed an objection to the claimed real estate exemption on the basis, "that Debtors testified at the first meeting that the real estate, at the date of filing was not their principal residence and therefore no entitlement to claim the O.R.C. 2329.66(A)(1) exemption exists against the realty . . ."

The evidence as submitted and the facts necessary for a judicial determination of the issue at best are only sketchy. There is no question that the house on the premises severely burned about two months before this case was instituted and that the Debtors had never resided there. There seems to have existed some vague purpose in trying to rebuild the house for occupancy at some future date, although there is no evidence that any serious attempt has ever been made to accomplish this purpose.

Within rule, the Trustee in Bankruptcy on 18 September, 1980, filed a Brief addressing the legal issues. However, no brief or citation of legal authorities was filed in behalf of Debtors, as requested.

In light of the principles and precedents cited by the Trustee, he would have been derelict in his fiduciary duties not to have objected to the claimed exemption.

### OPINION

Citing the exact wording of Ohio Revised Code Section 2329.66(A)(1), the Trustee draws attention to the phrase that the exemption can only be claimed "in one parcel or item of real or personal property that the person or dependent of the person *uses as a residence.*" [emphasis added]

The decision *In re Paul Velez–Velez*, 6 B.R. 373, *Collier Bankruptcy Cases, No. 80–00032–BKC–TCB, Page 822 (S.D.Fla.1980)* is cited, wherein the Court found (under the wording of the Bankruptcy Code) that a homestead could not be allowed in Puerto Rico real estate because the debtor resided in Florida and occupied Florida real estate. Also cited in behalf of the Trustee was *In re Crum, 221 Fed. 729, 14 O.L.R. 121,* for

the principle that the date of filing the bankruptcy petition is the cleavage date. No other authorities were cited in behalf of the Trustee.

No elaborate citation of authorities is necessary to support the truism that any determination of exempt property is a question of State law, as Ohio opted out of the federal exemptions. We note, nevertheless, that the state statute in question (O.R.C. § 2329.66(A)(1)) tracks the wording of the federal statute (11 U.S.C. § 522(d)(1)) and that the main difference in the statutes is a reduction of the exemption from $7,500.00 in value to $5,000.00 in value.

The leading pronouncement by the Supreme Court of Ohio bearing on the issue *sub judice* may be found in *Mutual Bldg. & Loan Company v. Efros (1949) 152 Ohio St. 369, 89 N.E.2d 648*. The Ohio statute (§ 11663–1 G.C.) there at issue provided in pertinent part that the exemption applied to " . . . real property or any interest therein, upon which real property there has been located a dwelling or dwellings for not more than two families *which has been used* in whole or in part as a home or farm dwelling or which at any time was or is now held as a homestead by the person who executed or assumed such mortgage or other instrument, *or which has been held* by such person as a homesite . . ." [emphasis added]. In that case, the defendant had purchased a two–family dwelling for the purpose of establishing a home for himself and his parents. Neither the defendant nor his parents ever resided in the premises. Within six months after the purchase, he sold the premises and within a few months thereafter, joined his parents who had moved to Palestine in the Holy Land. The court held that, "Premises that have not been occupied as a home or dwelling place have not been impressed with the character of a homestead and cannot be claimed as such. To constitute a homestead under the statute, there must be a residence, actual or constructive . . ." It was further held that, "where premises have never been used or occupied as a homestead the right thereto cannot be acquired by a mere intention to use them as such at some indefinite future

time . . ." *89 N.E.2d 648, at 651, (citations therein omitted)*.

Even though the Ohio Supreme Court's decision may seem rather ambiguous as to whether constructive occupancy of real estate may constitute the right to a homestead, the wording and authorities cited in the decision suggest such principles, if the facts had been otherwise.

Because exemption rights are traditionally interpreted "liberally" to afford debtors and their families the benefits and purposes of such allowances, this court is constrained to hold in light of the weight of authority that a truly constructive occupancy more nearly effects the statutory purpose of protecting a family unit's home. *See* discussion of the "enlightened public policy which seeks to protect the family of a debtor against the deprivation of a home" in *Nadler, "Exemptions", 16 Ohio State Law Journal 63, at 64–65 (1955)*. The Supreme Court of Ohio in an early decision denying a homestead without occupancy under different facts, expressed such public policy, as follows: "in reaching this conclusion, we have not been unmindful of the fact that the laws exempting a family homestead and other property from force sale to pay the debts of an improvident debtor, originated in a salutary and humane policy, and that they should receive such construction as will accord with the beneficent object of their enactment . . ." *Gibson v. Mundell, (1876) 29 O.S. 523, at 529*.

Under such an interpretation of the current Ohio statute, if there is demonstrated a present intention to occupy premises as a homestead at a definite future time, accompanied by actual ongoing preparations for the occupancy thereof, the temporarily unoccupied premises should be in fact impressed by the homestead exemption, assuming no subterfuge or intent to defraud. *See Annot. at 40 Am.Jur.2d, Homestead, 375*, for a citation of case precedents in other states. The intention to occupy at a definite future date must be substantiated by demonstrative, tangible, physical evidence in addition to any expressed subjective intent.

Having reached this conclusion, it becomes readily apparent that the evidence submitted in behalf of the Debtors is woefully inadequate to make a determination of the issue so capably raised by the Trustee in Bankruptcy. The Trustee, as an Officer of the Court, would be the first to profess, however, that there should be no intention to deprive the debtors of such a crucial necessity for the family if proper evidence can honestly be adduced.

*ORDERED, ADJUDGED, AND DECREED*, that the objections filed by the Trustee in Bankruptcy to the claimed homestead should be, and are hereby, sustained on the evidence adduced, but leave is granted to Debtors to submit within two weeks a motion to reopen for demonstrative, tangible, physical evidence of rehabilitation expenses, if any, not heretofore adduced, conformably to this decision, but antedating the cleavage date.