In re Betty L. COLE, Debtor.

Bankruptcy No. 95–10205.

United States Bankruptcy Court,
D. Maine.

Aug. 2, 1995.

Joseph M. O'Donnell, Goodspeed & O'Donnell, Augusta, ME, for debtor.

P.J. Perrino, Jr., Chapter 7 Trustee, Augusta, ME.

### MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Bankruptcy Judge.

Submitted for decision on a stipulated record is the trustee's objection to the debtor's exemption claim in certain real estate. I conclude that the objection must be sustained

because the debtor does not "use" the property "as a residence" as Maine's exemption statute requires.[1]

### Background

Betty L. Cole ("Cole" or "debtor") voluntarily filed for Chapter 7 relief on March 23, 1995. She designated certain "raw land" in Hartland, Maine, as exempt under 14 M.R.S.A. § 4422(1). The Chapter 7 trustee timely objected, asserting that the exemption does not apply because Cole lives elsewhere. Although she concedes that she has never resided at the Hartland property, Cole asserts that she has long intended to do so.

Both before and after filing her bankruptcy petition, Cole resided in Vassalboro, Maine. She holds an undivided one-half interest in a mobile home and real estate there. Cole lives with the property's co-owner, who refuses to forsake Vassalboro for Hartland. Although Cole claims that she and her disabled, minor daughter will settle in Hartland "as soon as circumstances permit," those circumstances consist mainly, if not completely, of convincing her companion that he should move to Hartland with her.

In the summer of 1994, during a period when she and her Vassalboro mate's relationship got a bit rocky, Cole installed a septic system at the Hartland property. Aside from that, the land remains wholly unimproved.

### Discussion

#### 1. Statutory Context.

■ Maine has "opted out" of the federal exemption scheme. 11 U.S.C. § 522(b)(1); 14 M.R.S.A. § 4426. *See In re Bates,* 176 B.R. 104, 106 (Bankr.D.Me.1994). The state provides a "residence" exemption providing, in pertinent part, that "[t]he exemption of a debtor's residence" extends to "the debtor's aggregate interest, not to exceed $12,500 in value, in real or personal property that the debtor or a dependent of the debtor *uses as a residence.*" (Emphasis supplied.)[2] The statute provides higher exemption limits under certain circumstances and exempts, up to the same limits, the proceeds of the sale of a residence if they are reinvested in a residence within six months. 14 M.R.S.A. § 4422(1)(A), (B) and (C).

#### 2. Burden of Proof.

■ Pursuant to Fed.R.Bankr.P. 4003(c), "the objecting party has the burden of proving that the exemptions are not properly claimed." *See Bates,* 176 B.R. at 106. In our case, the trustee has rebutted "the prima facie effect of the claim of exemption" by the stipulated fact that the debtor has never resided at the subject property. *In re Hollar,* 79 B.R. 294, 295–96 (Bankr.S.D.Ohio 1987) (burden shifting where "the debtor is not physically living in the property for which the exemption is sought at the time the bankruptcy is filed"). Therefore, the burden of production shifts to the debtor. *See In re Hodgson,* 167 B.R. 945, 950 (D.Kan.

---

1. This memorandum sets forth findings and conclusions in accordance with Fed.R.Bankr.P. 7052 and 9014. Unless otherwise indicated, all references to statutory sections are to the Bankruptcy Reform Act of 1978 ("Code" or "Bankruptcy Code"), as amended, 11 U.S.C. § 101, *et seq.* References to "M.R.S.A." are to the Maine Revised Statutes Annotated (1980 & Supp.1994).

2. Cases and other authorities interpreting the Code's § 522(d)(1) residence exemption appropriately assist in defining the limits of Maine's residence exemption. The Maine statute mirrors the Code's in its reference to property that the debtor "uses as a residence." "Maine's legislature enacted 14 M.R.S.A. § 4422 in 1981 as a component of its opt-out legislation," adopting much of the federal exemption scheme. *In re Bates,* 176 B.R. at 106 (citing 1981 Me.Laws, ch. 431 sec. 2 (amended 1985, 1989 and 1991); 14

M.R.S.A. § 4426; 11 U.S.C. § 522(b)(1)). *See In re Langley,* 21 B.R. 772, 773 n. 3 (Bankr.D.Me. 1982); *In re Breau,* 17 B.R. 697, 698 (Bankr. D.Me.1982).

To be precise, Cole asserts that she has always intended the Hartland property to be her "homestead." Debtor's Response to Trustee's Objection. The term "homestead" does not necessarily equate with "residence" in all cases, but Congress intended the words to be interchangeable in the context of § 522(d)(1). *See In re Brent,* 68 B.R. 893, 895 (Bankr.D.Vt.1987). *See generally* 2 *Norton Bankruptcy Law and Practice 2d* § 46:10 at 46–17 (1993) [hereinafter *"Norton"*] ("residence" and "homestead" are synonymous with regard to bankruptcy exemption law, so that "only the place the debtor actually occupies as a home can be exempted as a homestead") (citations omitted).

1994) (burden of production will shift, but burden of proof remains with objecting party).

■ Thus, Cole must adduce evidence that would support a finding that she "uses" the Hartland property "as a residence." In the absence of such evidence, the trustee's objection will be sustained. *Hodgson,* 167 B.R. at 950; *Hollar,* 79 B.R. at 295–96.

### 3. *Evaluating Cole's Claim.*

■ "[I]n divining the exemption statute's content, an overarching principle of statutory construction applies: 'Exemption statutes are to be liberally construed in favor of the debtor.'" *In re Bates,* 176 B.R. 104, 106 (Bankr.D.Me.1994) (citing *In re Chiz,* 142 B.R. 592, 593 (Bankr.D.Mass.1992) and collecting cases). Generally speaking, "[t]he critical time for determining the debtors' entitlement to [an] exemption is the date the bankruptcy petition is filed." *In re Grindal,* 30 B.R. 651, 652 (Bankr.D.Me.1983). *Accord In re Cope,* 80 B.R. 426, 427 (Bankr.N.D.Ohio 1987) (collecting cases); *In re Tardiff,* 38 B.R. 974, 976 (Bankr.D.Me.1984).

As to Maine's residence exemption in particular, Judge Goodman has observed:

> The concept of 'residence' is a flexible one, and must be construed in light of the policies underlying the exemption statute. In general, the purpose of exemption statutes is to secure for the debtor the means to support himself and his family. In particular, homestead statutes promote the stability and welfare of the state by encouraging property ownership, and they secure to the householder a home for himself and his family. While the homestead exemption should be liberally construed in order to afford all the relief the legislature intended, it must not be so broadly construed as to ignore the Maine legislature's clearly expressed intention to favor homeowners over non-homeowners.

*Grindal,* 30 B.R. at 652–53 (citations omitted). *See also In re Carilli,* 65 B.R. 280, 282

(Bankr.E.D.N.Y.1986) (purpose of exemption "is to keep a roof over the heads of the debtor and his family").

■ Under certain circumstances, a debtor may validly claim the residence exemption even if he or she does not physically occupy the property on the petition date: "Given the purposes of the homestead exemption, a finding that the debtors *actually* occupied the homestead on the filing date is neither necessary nor sufficient to qualify for the exemption. Occupancy may be constructive as well as actual." *Grindal,* 30 B.R. at 653.[3] *See generally* 3 King, *Collier on Bankruptcy* ¶ 522.10 (15th ed. 1995) [hereinafter "*Collier*"]; 2 *Norton* § 46:10 at 46–17 to 46–18 (temporary absence will not undermine an otherwise valid claim of exemption). *Cf. Tardiff,* 38 B.R. at 976 (intent to use proceeds of sale of residence to buy another residence within a reasonable time brings proceeds within the exemption).

But decisions determining that a debtor's "constructive occupancy" supports an exemption claim all involve situations where the debtor actually resided on the property at one time, and, although not resident there on the petition date, demonstrated an intention to return. *See, e.g., In re Dodge,* 138 B.R. 602, 607 (Bankr.E.D.Cal.1992) (homestead exemption held valid despite temporary absences due to employment obligations); *In re Yau,* 115 B.R. 245, 249 (Bankr.C.D.Cal.1990) (temporary absence such as a vacation or hospital stay will not undermine an otherwise valid claim of exemption); *Brent,* 68 B.R. at 896 (temporary absence during divorce proceeding and at time of bankruptcy filing does not undermine homestead exemption where debtor intended to return); *In re Eckols,* 63 B.R. 523 (Bankr.D.N.H.1986) (same); *In re Lehman,* 44 B.R. 946, 948 (Bankr.D.Minn. 1984) (constructive occupancy found where most of debtor's possessions were stored at premises, and temporary absence was due to fear of violence from family members). Such cases state or imply that although there must be a period of original and actual occupancy,

---

**3.** Of course, where a state has opted-out of the federal exemption scheme, or the debtor otherwise elects the state's list of exemptions, that particular state's exemption statute will ultimately control whether and to what extent construc-

tive occupancy will suffice to support a claim of exemption. *See, e.g., In re Sikkink,* 60 B.R. 298 (Bankr.D.Minn.1986) (construing "owned and occupied" requirement of Minnesota's exemption statute).

subsequent absences will not in all circumstances defeat the exemption claim. One may infer the same requirement from *Grindal*, 30 B.R. at 653 (referring to debtor's intention to "return").

Even if I were to accept (for the moment) the proposition that a residence exemption can be established without prior occupancy, Cole has demonstrated nothing more than a vague intention to live on the Hartland property and has shown no present plans or tangible, contemporary preparations to move there. That is not enough. *See, e.g., In re Claflin*, 761 F.2d 1088, 1091 (5th Cir.1985) ("If vague, contingent and subjective intent ... could control the designation of a homestead contrary to their actual use and occupancy ... it would be impossible for anyone to know when a homestead claim might be valid."); *In re Dennison*, 129 B.R. 609, 611–12 (Bankr.E.D.Mo.1991) (intent to reside once previous life tenancy expires is too indefinite); *In re Winegarten*, 101 B.R. 705, 708 (Bankr.E.D.Okla.1989) (exemption would not be sustained where debtors "have taken an inordinate and unreasonable amount of time in order to actually occupy the land"); *In re Cottingim*, 7 B.R. 56, 57 (Bankr. S.D.Ohio 1980) (vague purpose to rebuild and reoccupy without demonstrable, tangible, physical evidence of efforts to do so would not support exemption).[4] *See also 3 Collier* ¶ 522.10 at 522–53 to 522–54 ("Essential to the right of the homestead exemption is designation and occupancy of the property. Occupancy may be constructive as well as actual, but there must be some positive indication of an intent to occupy the premises; an undefined floating intention is inadequate.").

▉ Although I will construe the exemption statute liberally in order to ensure

that its beneficial objectives are realized, I will not rewrite the statute. Residency of some character is a prerequisite to 14 M.R.S.A. § 4422(1)'s exemption entitlement. *See, e.g., Huffines*, 57 B.R. at 741 (M.D.Tenn. 1985) ("exemptions are to be liberally construed to carry out their purposes," but residency requirement must be met).

### Conclusion

For the reasons set forth above, the trustee's objection to debtor's claim of exemption is SUSTAINED.

---

4. In applying Ohio's exemption statute, which closely resembles Maine's, the *Cottingim* court commented:

> 'Premises that have not been occupied as a home or dwelling place have not been impressed with the character of a homestead and cannot be claimed as such. To constitute a homestead under the statute, there must be a residence, actual or constructive.... [W]here premises have never been used or occupied as a homestead the right thereto cannot be acquired by a mere intention to use them as such at some indefinite future time.'

7 B.R. at 58 (citation omitted). *See In re Huffines*, 57 B.R. 740, 741 (M.D.Tenn.1985) (denying

exemption where debtors had never lived at the property, and there existed no house on the lot); *In re Batchelor*, 97 B.R. 993, 996 (Bankr. E.D.Ark.1988) (summarily sustaining objection to claim of exemption where debtors had never lived on real estate at issue); *Hollar*, 79 B.R. at 296 (burden shifting in dispute over claim of exemption); *In re Roberts*, 26 B.R. 397, 398 (Bankr.D.Me.1983) (citing *In re Precourt*, No. 281–00498 (Bankr.D.Me. Oct. 1, 1982) "where the court concluded that the debtors were not entitled to claim a homestead exemption in a mortgage on real estate because neither they nor their dependents resided there").